IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DMITRY PRONIN, | : |
| Movant/Defendant, | : |
| v. | : Civ. Act. No. 13-06-LPS |
| | : Cr. Act. No. 11-33-LPS |
| UNITED STATES OF AMERICA, | : |
| Respondent/Plaintiff. | : |

Dmitry Pronin.

    *Pro se* Movant.

Edmond Falgowski, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.

    Attorney for Respondent.

**MEMORANDUM OPINION**

September 30, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Dmitry Pronin ("Movant") filed a timely Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (D.I. 27) The United States ("Government") filed an Answer in Opposition. (D.I. 33) Thereafter, Movant filed a combined Motion to Expand the Record and a Motion to Appoint Counsel (D.I. 35), a Supplemental Motion (D.I. 38),[1] another Motion to Appoint Counsel (D.I. 39), and a Motion for a Certificate of Appealability (D.I. 40).

For the reasons discussed, the Court will grant the Motion to Expand the Record, deny the Motion to Appoint Counsel without prejudice to renew, reserve ruling on Claim One until the Government has provided supplemental briefing, and deny Claims Two and Three of Movant's § 2255 Motion without holding an evidentiary hearing.

## II. PROCEDURAL AND FACTUAL BACKGROUND

In April 2011, Movant was indicted on the following counts: (1) armed bank robbery, in violation of 18 U.S.C. § 2114(a) and (d); (2) carrying, using, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and (3) possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5)(A) and (B). (D.I. 1) These charges arose from Movant's commission of an armed robbery at the Wilmington Savings Fund Society ("WSFS") branch located in the Pike Creek Shopping Center in Wilmington, Delaware. (D.I. 23 at 17)

On June 20, 2011, Movant entered a guilty plea to Counts One and Two of the Indictment. (D.I 14) In exchange for Movant's guilty plea, the Government agreed that a two-level reduction in

---

[1] Movant's combined Motion to Expand the Record/Appoint Counsel was docketed as a Second § 2255 Motion, and his Supplemental Motion was docketed as a Third § 2255 Motion. The Order accompanying this Memorandum Opinion directs the Clerk to correct the docket entries to be consistent with the Court's description of the filings in this footnote.

offense level for acceptance of responsibility was appropriate. (D.I. 14 at ¶ 3) Further, if Movant's offense level was determined to be 16 or greater, the Government agreed to recommend an additional one-point reduction for acceptance of responsibility. *Id.*

The United States Probation Office prepared a Presentence Investigation Report ("PSR"), which calculated a total advisory guideline range of 114 to 121 months. (D.I. 33 at 7) Movant requested a variance for "a sentence at or slightly below the bottom of the advisory guideline range of 114 to 121 months." (D.I. 17 at 1) After thoroughly reviewing the PSR and the written submissions by the parties, and after hearing from the parties during the sentencing hearing, the Court denied Movant's motion for a variance and sentenced Movant to a total term of 120 months of imprisonment. (D.I. 20)

Movant filed a *pro se* notice of appeal on October 7, 2011. (D.I. 21) On October 19, 2011, the Court of Appeals for the Third Circuit appointed the Federal Public Defender's Office for the District of Delaware to represent Movant during his appeal. *See United States v. Pronin*, C.A. No. 11-3789, Order (3d Cir. Oct. 19, 2011). On January 31, 2012, the Assistant Public Defender representing Movant ("appellate counsel") filed a Motion for Voluntary Dismissal of Movant's Appeal Pursuant to Federal Rule of Appellate Procedure 42(b). (D.I. 33-1 at A11-A15) On February 15, 2012, the Third Circuit issued an Order granting that motion and dismissing Movant's appeal. *See United States v. Pronin*, C.A. No. 11-3789, Order (3d Cir. Feb. 15 2012).

In January 2013, Movant filed the instant § 2255 Motion. The Government filed an Answer in Opposition. (D.I. 33) Movant subsequently filed a combined Motion to Expand the Record and to Appoint Counsel (D.I. 35), a Supplemental Motion (D.I. 38), a second Motion to Appoint Counsel (D.I. 39), and a Motion for a Certificate of Appealability (D.I. 40).

### III. DISCUSSION

Movant timely filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant To 28 U.S.C. § 2255. In his Motion, Movant explicitly asserts the following two grounds for relief: (1) defense counsel failed to investigate and present Movant's medical/psychological condition during sentencing; and (2) defense and appellate counsel compelled Movant to withdraw his appeal of his sentence, which he did under duress.[2]

Movant has properly presented his ineffective assistance of counsel claims in a § 2255 Motion. *See Massaro v. United States*, 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). In the context of a guilty plea, a movant satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). When, as here, a movant contends that counsel provided

---

[2] The Government states that the instant Motion asserts three ineffective assistance of counsel claims, because it liberally construes Movant's request to delete from the PSR certain statements concerning his mother as a third ineffective assistance of counsel claim. (D.I. 33 at 9) Given the absence of any other reference concerning the deletion of certain statements from the PSR in Movant's filings in this proceeding, the Court does not view Movant's single sentence as constituting an independent ineffective assistance of counsel claim. Rather, since the deletion request was made in the § 2255 Motion's paragraph concerning the relief requested (D.I. 27 at 13), the Court will treat the statement as a request to amend the PSR by deleting certain statements concerning Movant's mother.

ineffective assistance during sentencing, the prejudice prong is satisfied by demonstrating a "reasonable probability that, but for counsel's errors, the result of the sentencing proceeding would have been different than what occurred." *United States v. Polk*, 577 F.3d 515, 520 (3d Cir. 2009). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced. *Strickland*, 466 U.S. at 668. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* at 689

### A. Motion to Expand the Record and to Appoint Counsel; Supplemental Motion

During the pendency of this proceeding, Movant filed a Motion to Expand the Record with: (1) an "affidavit" allegedly signed by Movant prior to the filing of his § 2255 motion, wherein he asserts that he informed defense counsel of his "several mental and neurological issues" and that he asked defense counsel for a mental health and neurological health evaluation, which was never performed (D.I. 35 at 7); (2) an "affidavit" allegedly signed by Movant prior to the filing of his § 2255 motion, wherein he asserts that the defense counsel who represented him during his criminal proceeding "threatened him out of pursuing" his direct appeal (D.I. 35 at 35); and (3) two neuropsychiatric evaluation reports that were performed by and for the Office of the Public Defender for the State of Maryland in 2015, concluding that Movant currently suffers from post-traumatic stress disorder and bipolar disorder. (D.I. 35 at 8-34)

The Court grants the Motion to Expand the Record. However, the Court notes that the two "affidavits" merely amplify the allegations in the initial two claims in Movant's § 2255 Motion, and are, in essence, supplements to information already before the Court.

As for Movant's Motions to Appoint Counsel (D.I. 35; D.I. 39), the Court will deny the Motions without prejudice to renew. Movant's filings demonstrate his ability to articulate his claims

and represent himself, and the Court concludes that the interests of justice do not require the appointment of counsel at this time. Nevertheless, the Court is willing to revisit the appointment of counsel issue either *sua sponte* or upon proper motion should it subsequently appear that the complexity of the factual issues or the need for additional legal briefing require the representation by counsel at a later date.

Finally, Movant's Supplemental Motion (D.I. 38) merely re-asserts the issues presented in Claim One. Therefore, the Court will grant the Motion to Supplement.

### B. Claim One: Defense Counsel Failed to Investigate and Present Movant's Medical/Psychological Issues at Sentencing

In Claim One, Movant contends that defense counsel failed to "properly investigate" and present his "medical situation" during sentencing. Movant asserts that defense counsel failed to act on Movant's request that defense counsel should obtain medical documentation from the attorney who previously had represented Movant in Baltimore County Maryland. (D.I. 27 at 4, 16-21) According to Movant, the Court may have granted a downward departure due to his medical/psychological condition if defense counsel had presented the pertinent information during the sentencing hearing.

In response, the Government asserts that, even assuming defense counsel was deficient in failing to obtain and present the medical/psychological information Movant's Maryland attorney may have had in her possession, Claim One should be denied because Movant cannot show that he was prejudiced by that failure. The Government contends that Movant's "one-page, undated, unauthenticated Medical Certificate in Russian from a Polyclinic located in Russia, translated by an unknown translator into English, listing a diagnosis of vegetative-vascular dystonia of eutonic type, asthenic-neurologic syndrome," which Movant refers to as a "nervous neck tick," would not have

altered the outcome of Movant's sentencing hearing because it "contains no mitigating information establishing a diminished mental capacity at any pertinent time." (D.I. 33 at 13-14)

As previously discussed, the Court has granted Movant's Motion to Expand the Record with two neuropsychiatric reports from Maryland that were written in the Spring of 2015. The Government formulated its response to Claim One without having had an opportunity to review those reports. Therefore, the Court will reserve ruling on Claim One until after the Government has had an opportunity to review the two reports and has filed a Supplemental Response.[3]

---

[3] In its Supplemental Response, the Government shall address the following:

1. Paragraphs 80, 81, and 82 of the PSR.

2. The two neuropsychiatric reports from Maryland that were written in 2015 and based on information gathered through face-to-face interviews with Movant. Both reports explicitly acknowledge that the reports were not based on any of Movant's medical, educational, or mental health records from Russia, because those records were not available.

3. The following conclusion from the Fourth Circuit's decision (*Pronin v. Johnson*, 628 F. App'x 160, 2015 WL 5833939 (4th Cir. Oct. 7, 2015)) regarding Movant's denial of access to the courts case, a case filed pursuant to 42 U.S. § 1983:

> In light of these circumstances, we find that evidence of serious medical illness, including bipolar and borderline disorders, would have supported Pronin's case at sentencing. Pronin need only show a "reasonable probability" that, absent ineffective assistance, his sentence might have been different. [] While Pronin is able to submit mental health evidence from 2015 in his § 2255 proceeding to show that he currently suffers from mental illnesses, the Defendants' alleged destruction of his legal materials prevents him from providing the court with his medical history showing that these illnesses had been diagnosed prior to his criminal activity. This evidence could be helpful in showing that his attorney should have investigated his mental health.

*Pronin v. Johnson*, 2015 WL 5833939, at *3.

4. Whether an evidentiary hearing is required.

In addition, although the Government properly focused on the prejudice prong of the *Strickland* standard in its argument regarding Claim One, the Court finds that it would be helpful to have defense counsel's response to the allegations contained in Claim One. Thus, the Court will direct the Government to obtain an affidavit from defense counsel and file it along with its Supplemental Response.

### B. Claim Two: Defense and Appellate Counsel Coerced Movant to Withdraw Direct Appeal

In Claim Two, Movant contends that he was coerced into withdrawing his appeal because his former defense counsel and appellate counsel threatened to send his entire file to the prosecution if he did not do so. The record belies Movant's assertion of coercion. On January 31, 2012, appellate counsel filed in the Court of Appeals for the Third Circuit a motion captioned "Motion for Voluntary Dismissal of Appeal Pursuant to F.R.A.P. 42(b)." (D.I. 33-1 at 13-17) According to the Motion, after appellate counsel reviewed and discussed the case with Movant, Movant informed appellate counsel that "he decided to withdraw his appeal." (D.I. 33-1 at 14) The Motion for Voluntary Dismissal explains that appellate counsel "directed [Movant] to provide a written letter confirming his intent to withdraw the appeal." (D.I. 33-1 at 14) Movant supplied that letter, dated January 18, 2011, stating, "I no longer want to pursue my appeal on the sentence of 9/21/2011. Please withdraw my appeal. Thank you." (D.I. 33-1 at 14-15)

Movant attempts to support his contention that his former defense counsel and appellate counsel coerced him into withdrawing his appeal with two "affidavits" signed by him describing his

---

5. Whether the two neuropsychiatric reports now in the record require authentication, and whether any additional psychological evaluations are needed or would prove helpful.

6. Any other issue the Government deems relevant to Claim One.

version of what transpired prior to the withdrawal of the appeal. The first "affidavit" ("Affidavit One") was filed on January 2, 2013 with his § 2255 Motion, and is dated January 31, 2012. (D.I. 27 at 14-15) According to Affidavit One, appellate counsel and Movant's former defense counsel both spoke to Movant via telephone on December 19, 2012. (D.I. 27 at 14) Movant asserts that defense counsel threatened to send Movant's whole case file, "including the paperwork that might have been favorable to the prosecution," directly to the Government. *Id.* The second "affidavit" ("Affidavit Two") was filed on August 4, 2015 with his Motion to Expand the Record, and is dated December 24, 2011. (D.I. 35 at 35) According to Affidavit Two, Movant's former defense counsel spoke to Movant on December 22, 2011 via telephone, and told Movant that his appeal would go nowhere and that Movant would "get even more time than [he] got, and that a neuropsychiatric evaluation and evaluation by a social worker were unnecessary." (D.I. 35 at 35)

The Court cannot verify the date on which the affidavits were signed because neither affidavit is notarized. Affidavit Two was purportedly signed on December 24, 2011 and specifically mentions a "neuropsychiatric evaluation and evaluation by a social worker," yet the two neuropsychiatric evaluations provided by Movant in his Motion to Expand the Record were not written until the Spring of 2015. If Movant actually signed the second affidavit on December 24, 2011, the Court is perplexed as to why he did not file it with his § 2255 Motion in January 2013 and why he waited until August 4, 2015 to file it. Although the date of Affidavit Two is not relevant in and of itself, the Court views the inconsistency between the 2011 date on Affidavit Two and the reference to the neuropsychiatric evaluations which were not performed until 2015 as casting doubt over the credibility of the assertions contained therein. In other words, when compared against the record and appellate counsel's statements in the Motion for Voluntary Dismissal of Appeal, the

Court is not persuaded by Movant's conclusory and unsupported assertion that his former defense counsel and appellate counsel threatened or coerced him to withdraw his appeal.

Accordingly, the Court will deny Claim Two as factually baseless.

### C. Request to Delete Certain Statements from PSR

Finally, Movant asks the Court to "expunge" or delete the "unproved allegations of [his] mythical connection to [his] mother's disappearance" from his PSR. (D.I. 27 at 13) Movant does not specify the exact allegations to which he refers. Without anything else to go on, the Court presumes that Movant is referring to paragraphs 74-76 of the PSR. Paragraph 74 describes how law enforcement in Russia began investigating the whereabouts of Movant's mother after she did not return from her trip to the United States, and that his mother has been considered "missing" since February 2011. Paragraph 75 of the PSR describes: (1) how Movant's mother arrived on a round-trip ticket from Russia at JFK Airport in New York, for the purpose of traveling to Baltimore, Maryland to meet Movant concerning his problems; (2) how she presented her passport to rent a car; and (3) how the last reported contact Movant's mother had with anyone was with a friend via cell phone as Movant's mother was driving to Baltimore. Paragraph 76 states that the rental car was not returned and that the mother's return airline ticket to Russia was not returned or cancelled. Paragraph 76 also states that the mother's passport was found in Movant's apartment in Baltimore, along with her credit cards.

Pursuant to 18 U.S.C. § 3661, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." The Supreme Court has explained that there "are no formal limitations on [a PSR's] contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which

the defendant is charged." *Gregg v. United States*, 394 U.S. 489, 492 (1969). Since inaccurate statements generally are not deleted from a PSR, "accurate though allegedly inflammatory statements ought also not be deleted." *United States v. Brickhouse*, 75 F. App'x 39, 41 (2d Cir. 2003). Finally, any objections to the statements contained in a PSR must be presented in writing within fourteen days after receiving the PSR. *See* Fed. R. Crim. P. 32(f)(1). In other words, a court does not have jurisdiction to consider an objection to a PSR after the sentence has been imposed. *See United States v. Newton*, 2013 WL 5205768, at *1 (M.D.N.C. Sept. 13, 2013); *United States v. Engs*, 884 F.2d 894, 895 (5th Cir. 1989) (stating that several circuits have found that Fed. R. Crim. P. 32 does not provide a post-sentence jurisdictional basis to attack a presentence report).

Here, the PSR was disclosed to Movant prior to his September 2011 sentencing hearing. During the sentencing hearing, Movant affirmed that he had a chance to review the PSR with defense counsel, and defense counsel stated that there were no objections to the PSR. (D.I. 33-1 at 4) Movant did not assert his instant request to delete certain statements from the PSR until January 2013, approximately one year and three months after the sentencing hearing. Given these circumstances, the Court does not have jurisdiction to consider or grant relief for Movant's untimely post-sentence challenge the PSR.[4]

---

[4] Additionally, the Court notes that it did not consider or mention the issue of Movant's mother's disappearance when deciding the sentence to be imposed. (D.I. 33-1 at 11) In fact, the Court explicitly stated that, "Putting aside any other legal issue that [Movant] may face," the Court had enough to "formulate an appropriate sentence" "just from the offense of Armed Bank Robbery and the Brandishing of the Weapon and the premeditated nature in which [Movant] undertook these offenses." (D.I. 33-1 at 11)

## IV. EVIDENTIARY HEARING

Section 2255 requires a district court to hold a prompt evidentiary hearing unless the "motion and the files and records of the case conclusively show" that the Movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Fed. R. Civ. P. 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that Movant is not entitled to relief for Claim Two. Therefore, the Court will deny Claim Two without an evidentiary hearing.

However, the Court has concluded it cannot review Claim One without supplemental briefing from the Government. Consequently, at this juncture, the Court will refrain from ruling on the need for an evidentiary hearing regarding Claim One.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

As previously discussed, the Court is refraining from ruling on Claim One until it has considered the Government's Supplemental Answer. Given these circumstances, the Court will reserve ruling on whether to issue a certificate of appealability until it issues a decision on Claim One.

## VI. CONCLUSION

For all of the foregoing reasons, the Court will dismiss as meritless Claim Two in Movant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence without an evidentiary hearing. However, the Court will reserve ruling on Claim One until the Government has filed a Supplemental Answer for that Claim. Additionally, the Court will refrain from ruling on the need for a certificate of appealability for any issue in this case until it has issued a decision on Claim One. An appropriate Order follows.